UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JULIAN MONTILLA, <br> KENNETH SEIDLER, <br> DENNIS HOPPES, <br><br> Plaintiffs, <br><br> v. <br><br> ARAMARK FOOD SERVICES CORP., STEVE DREDGE, GREG SCOTT, and JENNIFER BLAESING, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 11-cv-3193 |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiffs proceed pro se from their detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act.  They pursue a constitutional claim that the facility provided them inedible food by serving mechanically separated chicken which arrived in boxes marked "for further processing only."  Before the Court are Defendants' motions for summary judgment.  For the reasons explained below, the motion by Defendants Aramark Correctional Services LLC ("Aramark") and

Dredge is denied.  The motion by Defendants Scott and Blaesing is granted on the grounds of qualified immunity.

## Background

On December 20, 2010, four residents detained in the Rushville Treatment and Detention Center filed a purported class action challenging, as is relevant to this case, the serving of mechanically separated chicken from boxes marked "for further processing only."  Smego v. Ill. Dept. of Human Serv., 10cv3334 (C.D. Ill.).  On June 2, 2011, the plaintiffs' motion for class certification in that case was denied because they were pro se. (10cv3334, d/e 43, p. 2.)  A flood ensued of over 60 additional cases filed by some 80 other residents regarding the same issues.

The additional plaintiffs were joined into the original case, and Plaintiff Richard Smego was designated as spokesperson.  Id. d/e 336.  The Court was eventually able to recruit pro bono counsel, but only for the plaintiffs in the original case.  The claims of the rest of the plaintiffs were severed and stayed, with the hopes that the resolution of the original case might resolve the other cases or help guide the Court in resolving the other cases.

Summary judgment was denied in the original case, and then the original case settled in July 2014. Part of the settlement was an agreement that the mechanically separated chicken labeled "for further processing only" would no longer be served at the facility.

After the original case settled, the plaintiffs in the other cases were given an opportunity to file an amended complaint if they still wished to proceed with their claims. Six of those cases remain, including this one, which is now at the summary judgment stage. This case is a consolidation of the essentially identical claims of three residents.

### Legal Standard Applicable to Civil Detainee's Claim

The Fourteenth Amendment due process clause governs rather than the Eighth Amendment because Plaintiffs are civil detainees, not prisoners serving a sentence. The Supreme Court stated in Youngberg v. Romeo that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. 307, 322 (1982). This difference was reiterated by the Seventh Circuit in Hughes v. Scott, 816 F.3d 955, 956 (7th Cir. 2016); see also McGee v. Adams,

721 F.3d 474, 480 (7th Cir. 2013)(citing Youngberg but noting that "the Supreme Court has not determined how much additional protection civil detainees are entitled to beyond the protections afforded by the Eighth Amendment bar on cruel and unusual punishment."); Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 664 (7th Cir. 2012)( "[T]he Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees.").

In application, the Fourteenth Amendment standard thus far appears indistinguishable from the Eighth Amendment standard on conditions of confinement claims.  For example, the Seventh Circuit has stated that a conditions of confinement claim by a civil detainee requires an objectively serious deprivation and deliberate indifference by the defendant.  Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008).  This is the same standard governing an Eighth Amendment conditions of confinement claim by a prisoner.  The Seventh Circuit more recently confirmed in Smith v. Dart, 803 F.3d 304, 310 (7th Cir. 2015), that "[w]e have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to

conditions of confinement claims, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test."

However, the Seventh Circuit has also recently acknowledged the difficulty of defining the legal standard applicable to detainees, noting the "shifting sands of present day case authority." Werner v. Wall, 836 F.3d 751, 759 (7th Cir. 2016).  In Smith v. Dart, even though confirming the appropriateness of relying on Eighth Amendment cases, the Seventh Circuit stated in dicta that the subjective element requires a "'purposeful, a knowing, or a possibly reckless state of mind,'" arguably a lower hurdle than deliberate indifference.  803 F.3d 304 n. 2 (quoted cite omitted).  That dicta was ultimately referring to the Supreme Court case of Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015), which held that a defendant's subjective state of mind in a pretrial detainee's excessive force claim was relevant only to the extent that the defendant's actions were "purposeful or knowing."  After Kingsley, though, the Seventh Circuit has continued to rely on the deliberate indifference standard to pretrial detainees' claims for lack of

medical care. See, e.g., Daniel v. Cook County, 833 F.3d 728, 732-33 (2016).

At this point, the Court can avoid trying to define what greater protection is afforded civil detainees as compared to prisoners. Plaintiffs' claims survive summary judgment even under the Eighth Amendment standard. Avoidance may no longer be possible when faced with how the jury should be instructed, but that is a discussion for another day.

## Discussion

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

"The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'"

Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)(*quoting* French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985)(citation omitted).

**Defendants Aramark and Dredge**

Viewing the evidence in the light most favorable to Plaintiffs means accepting their version of events, if their version is based on personal knowledge.  Plaintiffs testified in their depositions that the mechanically separated chicken marked "for further processing only" was foul smelling and tasting.  Plaintiff Seidler described the smell like "meatloaf . . . stunk like it had been dead two or three days."  The two or three times Plaintiff Seidler tried to eat the product, he cramped up and used the restroom the rest of the day until the product passed.  (Pl.'s Dep. 39, 45, 46, 78)("It was horrible.")  Plaintiff Hoppes, who worked in the kitchen said the hallways would stink a "rotten toxic meat smell" whenever the product was cooked and that the product left a "horrible after taste" and "a slime in your mouth."  (Hoppe Dep. 34, 38, 40.)  Plaintiff Hoppes experienced stomach pains, nausea, and vomiting when he tried to eat the product until the product passed through his body hours later.  (Hoppes Dep. 43.)  Plaintiff Montilla describes the smell as a "puking smell. . . I couldn't even stand the smell of it.  I

couldn't even touch the tray." (Montilla Dep. 54.) When Plaintiff Montilla tried to eat the product, he experienced cramping, and, like the other Plaintiffs, trips to the bathroom until the product passed. (64.) On one occasion, Plaintiff Montilla experienced diarrhea for about two weeks, which started after eating the product, though he cannot say for certain that was the cause of his prolonged diarrhea. (Montilla Dep. 69, 76, 108.) Plaintiffs stopped eating the product after experiencing these adverse reactions a few times. Plaintiffs do not dispute that they lost no weight and did not suffer any long-term or lasting health problems.

     Defendants Aramark and Dredge argue that the federal regulations governing mechanically separated chicken do not prohibit the serving of meals containing mechanically separated chicken. They are correct. Plaintiffs do not dispute Defendants evidence that mechanically separated chicken is safe to eat (if properly prepared) and that many food products sold today contain mechanically separated chicken. (Arrasmith Aff. para. 11)("Approximately 1.5 billion pounds of mechanically separated chicken is produced per year for human consumption.")

However, federal regulations require that mechanically separated chicken used in food products does not exceed certain bone particle size and calcium content limits. 29 C.F.R. § 381.173(b)-(c). Mechanically separated chicken that exceeds those limits must be labeled as "mechanically separated chicken for further processing" and "used only in producing poultry extractives, including fats, stocks, and broths." 29 C.F.R. § 381.173(e).

As discussed in the Court's order on summary judgment in the original case, the label "further processing only" on the boxes containing the mechanically separated chicken, coupled with 29 C.F.R. §381.173(e), together create an inference in Plaintiff's favor that the chicken so marked should have been used only for soup stock and like products.

Defendants' evidence allows a competing inference, but that only demonstrates a factual dispute for the jury to decide. For example, Dr. Scott Stillwell, the Vice President of Food Safety and Quality Assurance at Tyson Foods, Inc., avers that the mechanically separated chicken sold to Aramark "for approximately nine years" met the standards under 9 C.F.R. 381.173(b) and (c). He avers that the purpose of the "for further processing only" label was to warn

the end user that raw chicken must be handled, stored, and cooked properly, and that the USDA has never required a "for further processing" label for any mechanically separated chicken sold by Tyson to Aramark for use at Rushville.  (Stillwell Aff. ¶¶ 7-12.)

A reasonable juror could wonder why Tyson would label all its mechanically separated chicken "for further processing only" when that term has a special meaning under § 381.173(e).  Did Tyson sell mechanically separated chicken which required the label "for further processing" under §381.173(e)?  If so, how was that product labeled?  Dr. Stillwell's affidavit creates but does not compel an inference in Defendants' favor.

Defendants also offer the affidavit of Dr. Regenstein, a Professor of Food Science, but Dr. Regenstein offers only the unremarkable conclusion that mechanically separated chicken, when properly prepared, is safe to eat.  (Regenstein Aff. para. 6.)  He does not address if mechanically separated chicken falling under § 381.173(e) could cause gastrointestinal distress.

The Director of Nutrition & Operational Support Services for Aramark (West Region), Cynthia Irizarry, avers that the meal plan at Rushville is designed to exceed the minimum caloric and nutritional

requirements to ensure that residents' nutritional and caloric needs are met, even if the residents choose not to eat part of a meal. (Irizarry Aff. 16.) She avers that residents who "refused to consume dishes containing MSC [] would still receive an average of between 2586 and 2596 calories and 83.7 grams of protein per day." (Irizarry Aff. 18.) Even so, a reasonable jury could still find that regularly providing food that made Plaintiffs physically ill—vomiting and diarrhea— was an objectively serious deprivation. *See, e.g.,* Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012)("sickening food" (nutriloaf) which caused "substantial weight loss, vomiting, stomach pains, and maybe an anal fissure . . . would violate the Eighth Amendment.)

Defendant Dredge, Aramark's Food Services Director at Rushville, and Defendant Scott, the Director of the facility, aver that they ate meals at Rushville containing the chicken marked "for further processing only" without problem. (Dredge Aff. para. 22; Scott Aff. para. 11.) Plaintiffs, in contrast, maintains that they got sick when they ate the mechanically separated chicken labeled "for further processing only." Both versions could be true—perhaps some tolerated this food without problem while others could not. In

any event, the Court must accept Plaintiffs' version to the extent that version is based on personal knowledge and experience. An inference arises from Plaintiffs' description of the smell, taste, and gastrointestinal difficulties that the product was intolerable to a significant number of residents.

Defendants argue that Plaintiffs need a medical expert to prove that their symptoms were caused by the mechanically separated chicken labeled "for further processing only." The Court disagrees. Whether food makes a person sick is within a layperson's experience. Experiencing diarrhea or vomiting every time one eats a certain food is a good clue. Plaintiffs' testimony that they experienced the symptoms when they ate the product and no longer experienced the symptoms when they stopped eating the product is enough to allow an inference of causation.

Thus, a jury could rationally find that Plaintiff suffered an objectively serious deprivation caused by the mechanically separated chicken labeled "for further processing only."

A jury could also rationally find that Defendants Aramark and Scott were deliberately indifferent to that deprivation.[1]  These Defendants had notice of the problem once served with the original lawsuit in early 2011, and probably before then through the grievances and complaints they received.  Despite that knowledge, they continued to insist that the product was fine.  They might still be serving the product if the residents had not filed lawsuits.

Defendant Dredge argues that he cannot be held liable because of his supervisory position.  But Dredge is not being sued because he is a supervisor.  He is being sued because, looking at the record in the light most favorable to Plaintiffs, Defendant Dredge directly participated in the violation Plaintiffs' constitutional rights by failing to take reasonable action despite knowing that the mechanically separated chicken for further processing was making a significant number of residents ill.  Inferences arise in Dredge's favor, too, but this is the summary judgment stage.

---

[1] Defendant Aramark argues that Plaintiffs do not name Aramark as a Defendant.  That is correct as to Plaintiff Seidler's amended complaint but not as to the amended complaints of Plaintiffs Hoppes and Montilla.  The Court construes Plaintiff Seidler's claim against Aramark as well, which will cause no prejudice to Aramark.  Aramark is already defending the same claim in this case and in other pending cases.

Aramark argues that Plaintiffs have not proven that a policy attributable to Aramark caused Plaintiffs' deprivation. However, Aramark was responsible for providing the meals, including choosing and ordering the ingredients to make those meals. Aramark officials approved the use of the mechanically separated chicken labeled "for further processing only" and continued that approval after a significant number of residents complained the product made them sick. That is the policy and practice at issue which is attributable to Aramark.

Defendants Aramark and Dredge reassert their argument that they are not state actors. The Court remains of the opinion that they are state actors because they have assumed an essential state function. <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 827 (7th Cir. 2009); <u>Jubeh v. Dart</u>, 2011 WL 6010267 *2(not published in federal reporter)(N.D. Ill. 2011)(rejecting Aramark's state actor argument and collecting cases).

The Court does agree with Defendants Aramark and Dredge that injunctive relief is no longer available since the mechanically separated chicken marked "for further processing only" is no longer being served.

**Defendants Blaesing and Scott**

Drawing an inference of deliberate indifference against Defendants Scott and Blaesing is difficult. Plaintiffs do not dispute that Defendant Blaesing listened to the residents' complaints, did her own research on mechanically separated chicken, and relied on Defendant Dredge's representation that the product met the requirements of the contract between Aramark and the facility. (Blaesing Aff. paras. 7-8.) Defendant Scott, in turn, would have been justified in relying on Defendant Blaesing's conclusions from Blaesing's inquiry into the matter. Burks v. Raemisch, 555 F.3d 592 (7th Cir. 2009)("The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks . . .")

However, the Court need not decide whether a reasonable inference of deliberate indifference, or some other sufficiently culpable state of mind, arises against Defendants Blaesing and Scott. Defendants Blaesing and Scott are entitled to qualified

immunity even if they did violate Plaintiff's rights.[2]  Pearson v. Callahan, 555 U.S. 223, 236 (2009)(courts may skip the question of whether a right was violated and answer only whether the right was clearly established).

The Supreme Court has recently reiterated the importance of qualified immunity.  White v. Pauly, 137 S.Ct. 548 (7th Cir. 2017).  Qualified immunity protects a government actor from liability unless the government actor violates a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  White v. Pauly, 137 S.Ct. 548, 550 (2017)(*quoting* Mullenix v. Luna, 136 S.Ct 305, 308 (2015)(internal quotations omitted).  A right is clearly established if the right is "beyond debate" under existing precedent at the time the violation occurred.  Id.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Id.

A recitation of cases establishing the obvious rule that detainees are entitled to nutritionally adequate food is not enough

---

[2] Defendants Aramark and Dredge do not assert qualified immunity.  See Zaya v. Sood, 836 F.3d 800 (7th Cir. 2016)("The Supreme Court has held that employees of privately operated prisons may not assert a qualified-immunity defense. *See Richardson v. McKnight*, 521 U.S. 399, 412, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). We have construed that holding to extend to employees of private corporations that contract with the state to provide medical care for prison inmates. *See Currie v. Chhabra*, 728 F.3d 626, 631–32 (7th Cir. 2013); *see also Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 794 n.3 (7th Cir. 2014).").

to defeat qualified immunity.  A case must be factually similar enough to this case to render Defendants' actions unconstitutional beyond debate.

The Court has not been able to find any case sufficiently similar to this case, whether under the Eighth or Fourteenth Amendment.  The cases the Court did find in which possible constitutional violations were identified involved a more objectively serious risk to health and also a more systemic deprivation than the circumstances in this case.

For example, the prisoner in <u>Prude v. Clark</u>, 675 F.3d 732, 735 (7th Cir. 2012) was fed a "sickening food" called nutriloaf for all his meals during his temporary stays in jail for 7-10 days each.  After two days during one of the stays, he began vomiting and stopped eating the nutriloaf, living instead on bread and water and ultimately losing 8.3% of his body weight.  Here, in contrast, the mechanically separated chicken for further processing only was served only six out of twenty-one meals per week, and Plaintiffs lost no weight.  Nor is there evidence that any Plaintiff suffered from nutritional deficiencies.  *Compare with* <u>Smith v. Dart</u>, 803 F.3d 304, 312 (7th Cir. 2015)(detainee's allegation that food was "'well below

nutritional value'" stated claim). Plaintiffs do not dispute that, from a nutritional standpoint, they were provided enough protein even if they did not eat the mechanically separated chicken marked "for further processing only."

In short, the Court has not found a case which establishes a clear right to not be served a sickening entree six times per week, so long as no nutritional inadequacies or loss of weight results from avoiding the sickening food.

## Conclusion

The Court must draw reasonable inferences in Plaintiffs' favor at this stage and may not weigh the strength of competing inferences. Stokes v. Board of Educ. of the City of Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.") Plaintiffs' testimony allows a reasonable inference that they suffered an objectively serious deprivation. Defendant Aramark's responsibility to provide food service, Defendant Dredge's position as Food Service Director, the original lawsuit filed in 2010,

Plaintiffs' joinder in that original lawsuit, and the refusal by Aramark and Dredge to stop serving the mechanically separated chicken labeled "for further processing only" for years allow a reasonable inference of deliberate indifference against Defendants Aramark and Dredge.  Defendants Blaesing and Scott are entitled to qualified immunity.  A trial will be scheduled, if necessary, after the Magistrate Judge holds a settlement conference.

**IT IS ORDERED:**

(1) The motions for summary judgment by Defendants Aramark and Dredge are denied (54, 56, 58).

(2) The motion for an extension to file a motion for summary judgment by Defendants Blaesing and Scott is granted (60).  The motion for summary judgment was filed within the requested extension.

(3) The motion for summary judgment by Defendants Blaesing and Scott is granted on the grounds of qualified immunity (68).

(4) Plaintiffs' motion for summary judgment is denied (70).

(5) The motion to substitute Attorney Rockershousen for Attorney Feng is granted (75).

(6)  This case is referred to the Magistrate Judge for a settlement conference.

(7)  The clerk is directed to terminate Defendants Blaesing and Scott.

(8)  The clerk is directed to notify the Magistrate Judge of the referral.

ENTER:   February 16, 2017

FOR THE COURT:

                                            **s/Sue E. Myerscough**
                                            SUE E. MYERSCOUGH
                                     UNITED STATES DISTRICT JUDGE